**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIAN TRULIK,[1]<br><br>        Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of<br>Social Security,<br><br>        Defendant. | ) Case No. CV 13-5666-JPR<br>)<br>)<br>) **MEMORANDUM OPINION AND ORDER**<br>) **AFFIRMING THE COMMISSIONER**<br>)<br>)<br>)<br>)<br>)<br>) |

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed August 22, 2014, which the Court has taken under submission without oral argument. For the reasons discussed below, the

---

[1] The Complaint was filed under the name Marian Turlick, but on August 20, 2014, Plaintiff filed notice that his last name is actually "Trulik."

1

Commissioner's decision is affirmed and judgment is entered in her favor.

## II. BACKGROUND

Plaintiff was born on September 27, 1950. (Administrative Record ("AR") 179.) He completed four or more years of college. (AR 221.) He worked full time from 1996 to 2007 doing body work and repair on automobiles. (AR 22-23, 218-19.)

On August 15, 2008, Plaintiff filed applications for DIB and SSI. (AR 179-86.) In disability reports submitted the same day, he alleged that he had been unable to work since January 30, 2007, because of right-eye blindness, left-eye double vision, and a hernia in his lower abdomen. (AR 218.) After Plaintiff's applications were denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge. (AR 112.)

A hearing was held on April 14, 2010. (See AR 68.) Plaintiff did not appear, however, and the ALJ subsequently dismissed Plaintiff's request for another hearing. (AR 68-69.) On May 3, 2010, Plaintiff requested Appeals Council review. (AR 136.) On April 28, 2011, the Appeals Council granted review, vacated the dismissal, and ordered that the case be remanded for a hearing. (AR 62-64.) That hearing was held on January 30, 2012. (AR 17.) This time, Plaintiff appeared and was represented by counsel. (AR 17-18.) Plaintiff testified, as did a vocational expert. (AR 15-48.) In a written decision issued March 9, 2012, the ALJ determined that Plaintiff was not disabled. (AR 73-81.) On March 22, 2012, Plaintiff requested Appeals Council review. (AR 13-14.) On May 7, 2013, the council

denied the request.  (AR 86-91.)  This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole.  Id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla but less than a preponderance.  Lingenfelter, 504 F.3d at 1035.  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  Id. at 720-21.

## IV. THE EVALUATION OF DISABILITY

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.  The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform

---

[2] RFC is what a claimant can do despite existing exertional

his past work; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. <u>Drouin</u>, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. <u>Id.</u>

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

B.   <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since January 30, 2007, his alleged onset date. (AR 76.) At step two, he found that Plaintiff had the severe impairments of right-eye blindness and hernia. (<u>Id.</u>) At step three, he determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (AR 77.) At step four, the ALJ found that Plaintiff had the RFC to perform medium work "with additional non-exertional limitations due to his vision loss." (AR 79.) Specifically, Plaintiff had "reduced depth perception and no peripheral vision on the right side." (AR 77.) Based on the

---

and nonexertional limitations. 20 C.F.R. §§ 404.1545, 416.945; <u>see</u> <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1  VE's testimony, the ALJ concluded that Plaintiff was unable to
2  perform his past relevant work as an automotive body repairer.
3  (AR 79.)  At step five, the ALJ determined that Plaintiff could
4  perform jobs that existed in significant numbers in the national
5  economy.  (AR 80.)  Accordingly, he found Plaintiff not disabled.
6  (AR 81.)
7  **V.   DISCUSSION**
8      Plaintiff claims that the ALJ erred in assessing his
9  credibility.  (J. Stip. at 4-5.)  Remand is not warranted because
10 the ALJ made specific findings and gave clear and convincing
11 reasons for rejecting Plaintiff's testimony.
12     A.   <u>Applicable Law</u>
13     An ALJ's assessment of symptom severity and claimant
14 credibility is entitled to "great weight."  See <u>Weetman v.
15 Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989); <u>Nyman v. Heckler</u>, 779
16 F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is not required to
17 believe every allegation of disabling pain, or else disability
18 benefits would be available for the asking, a result plainly
19 contrary to 42 U.S.C. § 423(d)(5)(A)."  <u>Molina v. Astrue</u>, 674
20 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks
21 omitted).
22     In evaluating a claimant's subjective symptom testimony, the
23 ALJ engages in a two-step analysis.  See <u>Lingenfelter</u>, 504 F.3d
24 at 1035-36.  "First, the ALJ must determine whether the claimant
25 has presented objective medical evidence of an underlying
26 impairment [that] could reasonably be expected to produce the
27 pain or other symptoms alleged."  <u>Id.</u> at 1036 (internal quotation
28 marks omitted).  If such objective medical evidence exists, the

ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the <u>degree</u> of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.[3] Lingenfelter, 504 F.3d at 1036; Lester, 81 F.3d at 834.[4]

In assessing a claimant's credibility, the ALJ may consider (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements,

---

[3] Defendant objects to the clear-and-convincing standard (J. Stip. at 16-17 & n.5), but it is clearly the law in the Ninth Circuit. See Garrison v. Colvin, 759 F.3d 995, 1014-15 & n.18 (9th Cir. 2014).

[4] In Ghanim v. Colvin, the Ninth Circuit noted that its precedent was inconsistent on whether the "clear and convincing" standard does not apply only when an ALJ makes an "actual finding of malingering" or also when the record merely contains "evidence of malingering." 763 F.3d 1154, 1163 n.9 (9th Cir. 2014). The Ninth Circuit declined to decide the issue, however. Id. Here, Plaintiff alleges that there is no evidence of malingering in the record. (J. Stip. at 13.) In fact, a consultative eye examiner found that Plaintiff's "pathology" did not "account for the patient's constricted visual field nor visual acuity at 20/70 in the patient's left eye" and that he would "expect [Plaintiff's] vision to be 20/40 or better in that eye and for him to have normal visual field." (AR 258.) Nonetheless, as discussed below, the ALJ gave clear and convincing reasons for rejecting Plaintiff's credibility.

and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002); <u>Smolen</u>, 80 F.3d at 1284. If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." <u>Thomas</u>, 278 F.3d at 959.

B.   <u>Relevant Background</u>

Plaintiff testified that he lost all vision in his right eye 15 years before the hearing. (AR 32.) He continued working as an automotive body repairer while his left-eye vision deteriorated but shifted from fabricating metal to managing and restocking. (AR 23.) He continued to work until "three years" before the hearing.[5] (AR 23-24.) The last time he saw an eye doctor was a year before the hearing. (AR 32.) The doctor told him to be careful and prescribed glasses for reading. (AR 32-33.) Plaintiff had a driver's license with a restriction for corrective lenses. (AR 33.)

Plaintiff testified that he had knee problems that made it difficult to walk or stand. (AR 24-25.) He could walk only two blocks before needing to stop and sit,[6] and he could stand for a

---

[5]   Three years before the hearing was mid-2009; Plaintiff's alleged onset date was more than two years before that.

[6]   In an August 2008 "Exertion Questionnaire," Plaintiff stated that he could walk "1.Mil" to the store and other places and that he felt "God. OK" afterward. (AR 223.)

maximum of 15 to 30 minutes at a time.  (Id.)  Plaintiff testified that he occasionally had back pain and suffered from cramps in his hands and legs during cold weather.  (AR 25.)

Plaintiff testified that his room and board were provided by a family he knew, at no cost to him.  (AR 25, 28.)  He cooked for himself and drove to the store.  (AR 29.)  Plaintiff took care of the 85-year-old father and went grocery shopping for him.  (AR 26.)  He also took care of the son, who weighed 500 pounds.  (AR 28-29.)  Plaintiff could not lift the son but watched him and cooked meals for him.  (AR 34.)

About once or twice a week, Plaintiff worked at a local motorcycle and "hotrod" repair shop by answering phones, giving advice, and cleaning oil.  (AR 30-31, 38-39.)  He had helped the shop owner modify hotrods until about a year before the hearing.  (AR 30-31.)  At times, the owner compensated Plaintiff by giving him "pocket money" or paying for his car insurance, which cost about $300 a year.  (AR 35-36.)

C.   Analysis

The ALJ discredited Plaintiff's symptom testimony because he found that the objective medical evidence, Plaintiff's daily activities, and his work record did not support the alleged intensity, persistence, and limiting effects of Plaintiff's symptoms.  (AR 77-79.)  Plaintiff contends that the ALJ erred by improperly applying Lingenfelter's two-step analysis and failing to provide legally sufficient reasons for rejecting his testimony. (J. Stip. at 7.)  On the contrary, as discussed below, the ALJ's findings were specific, his reasons were clear and convincing, and substantial evidence in the record supported

his determination.

As an initial matter, the ALJ noted the required two-step analysis (AR 77) and properly applied it, finding at step one that Plaintiff had two severe impairments (AR 76) but concluding at step two that Plaintiff's symptom testimony was not credible for various reasons. (AR 77-78.) Thus, the ALJ did not err in applying the law.

The ALJ began his factual assessment with the objective medical evidence, finding that it did not support Plaintiff's testimony of disabling vision and knee problems. He first noted that Plaintiff's treatment history was "sparse and conservative" and that "there appear[ed] to be no complications from a history of hernia repair." (AR 78.) Indeed, Plaintiff acknowledged that he had not sought any kind of medical treatment for his allegedly disabling conditions. (Id.) Although Plaintiff claimed that was because he couldn't afford it (AR 25), the ALJ properly rejected that excuse given that Plaintiff's living expenses were paid for and he acknowledged that he was occasionally compensated for his work. (AR 78); see Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (ALJ's finding that claimant's proffered reason for failing to seek treatment was not believable sufficient to discredit claimant's testimony). Similarly, the ALJ noted that Plaintiff "was not taking medication when he was examined by the consultative examining physician." (AR 78; see AR 260 (Plaintiff could relieve joint pain with medication yet was not currently taking medication); see Molina, 674 F.3d at 1112 (ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment);

10

Parra, 481 F.3d at 751 ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); cf. Fair, 885 F.2d at 602 (ALJ may not rely on claimant's failure to take pain medication when evidence suggests that claimant had good reason for not taking it). Although Plaintiff had "some cervical, lumbar, knee, and right foot tenderness" during the consultative physician's examination, his "[r]ange of motion [was] grossly within normal limits in his upper and lower extremities and he walked normally." (AR 78; see AR 262.) This evidence, the ALJ properly found, "undermine[d] [Plaintiff's] allegations." (Id.)

The ALJ also found inconsistencies between Plaintiff's testimony and the clinical opinion evidence, quoting extensively from the report prepared by consultative physician Concepcion Enriquez, who specialized in internal medicine. (AR 78; see AR 260-63.) On September 11, 2008, Dr. Enriquez completed an internal-medicine examination of Plaintiff. (AR 260.) She readily observed Plaintiff's right-eye visual impairment as well as tenderness in his knees and right foot. (AR 261, 263.) She did not, however, observe any limitations in the range of motion of Plaintiff's joints. (See AR 260-63.) In her functional assessment, she opined that

> [Plaintiff] can occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds. [Plaintiff] can stand and/or walk with normal breaks for six hours in an eight-hour workday. [Plaintiff] can sit with normal breaks for six hours in an eight-hour workday. He can still do frequent squatting, crouching and kneeling.

(AR 263; see AR 78 (quoting Dr. Enriquez).) About one month later, Dr. C. Scott, the state agency's consultative physician,[7] reached the same conclusions regarding Plaintiff's ability to stand, walk, and lift and carry loads. (AR 266-67; see AR 78.) The ALJ properly relied on these opinions in rejecting Plaintiff's testimony. Thompson v. Astrue, 458 F. App'x 632, 634 (9th Cir. 2011) (affirming ALJ's discrediting of claimant's testimony because it was "out of proportion to the objective clinical findings of limited functional restrictions"). Indeed, Plaintiff presented no medical or other evidence in support of his claims of disability besides his own testimony and allegations. Even had the ALJ found him credible, an award of benefits would not be appropriate. See 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ."); see also 20 C.F.R. §§ 404.1529(a), 416.929(a).

It is true, as Plaintiff notes, that an ALJ may not disregard a claimant's subjective symptom testimony solely because it is not substantiated by objective medical evidence. (See J. Stip. at 8-9 (citing Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991)).) The ALJ may, however, use inconsistencies with the medical evidence in the record as one factor in the evaluation. See Burch v. Barnhart, 400 F.3d 676,

---

[7] Dr. Scott's electronic signature includes a medical specialty code of 15, indicating gynecology. (AR 270); see Program Operations Manual System (POMS) DI 26510.089, U.S. Soc. Sec. Admin. (Oct. 25, 2011), http://policy.ssa.gov/poms.nsf/lnx/0426510089; POMS DI 26510.090, U.S. Soc. Sec. Admin. (Aug. 29, 2012), http://policy.ssa.gov/poms.nsf/lnx/0426510090.

681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). In Plaintiff's case, the ALJ based his determination on more than just the inconsistencies between Plaintiff's testimony and the objective medical evidence.  He also based it on inconsistencies between Plaintiff's allegations and his daily activities and work record.

In particular, the ALJ noted that Plaintiff's recent international travel to Austria was "inconsistent with [Plaintiff's] claimed pain and limitations."  (AR 78; see AR 198 (stating that Plaintiff was unable to attend hearing because he "had to leave the country" "due to family emergency").)  The ALJ also noted that Plaintiff "worked after his alleged onset of disability for cash 'under the table.'"  (AR 78.)  The Ninth Circuit has consistently held that an ALJ properly rejects a claimant's testimony when the claimant is able to travel or work after the alleged onset of disability.  See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (claimant traveled to Venezuela for extended time); Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (claimant did carpentry work "under the table" after date last insured); Carter v. Astrue, 472 F. App'x 550, 552 (9th Cir. 2012) (claimant worked part time for "nearly another year" after onset of disability); Beck v. Astrue, 303 F. App'x 455, 458 (9th Cir. 2008) (claimant traveled out of state). Plaintiff's case is no different.

Finally, the ALJ also based his assessment of Plaintiff's credibility on Plaintiff's "criminal history," noting "a history

of incarceration for his involvement in drugs" and his parole violations. (AR 77-78.) Although this reason is clear, it is not convincing because it is not supported by any evidence in the record. (See AR 26-28 (claimant's only prior criminal conviction was one DUI).)[8] Nevertheless, transcription or similar errors are harmless if, notwithstanding the error, the ALJ gave adequate explanation of his findings elsewhere in his decision. See, e.g., Wright v. Comm'r of Soc. Sec., 386 F. App'x 105, 109 (3d Cir. 2010) (Tashima, J., sitting by designation) (ALJ's misstatements in written decision harmless error when regardless of them "ALJ gave an adequate explanation supported by substantial evidence in the record"); Castel v. Comm'r of Soc. Sec., 355 F. App'x 260, 265-66 (11th Cir. 2009) (ALJ's erroneous reference to wrong medical reports harmless when he referred to reports "in two sentences" but "dedicate[d] two paragraphs" to correct reports, and decision conformed to medical evidence); Taylor v. Astrue, No. 4:07–CV–160–FL, 2009 WL 50156, at *10 (E.D.N.C. Jan. 7, 2009) (ALJ's misstatement of claimant's RFC in one sentence of decision "akin to a typographical error and constitutes harmless error" given that ALJ correctly stated RFC elsewhere in opinion and it was "overwhelmingly supported by substantial evidence").

On appellate review, this Court is limited to determining whether the ALJ properly identified reasons for discrediting

---

[8] It appears that the ALJ mistakenly inserted one paragraph concerning another claimant altogether into his decision, which was otherwise properly focused on Plaintiff's background and circumstances.

Plaintiff's credibility. Smolen, 80 F.3d at 1284. The inconsistencies between Plaintiff's allegations and the medical evidence, his daily activities, and his work record were sufficiently specific bases for discounting his testimony, and the ALJ's reasoning was clear and convincing. See Tommasetti, 533 F.3d at 1039-40; Houghton v. Comm'r Soc. Sec. Admin., 493 F. App'x 843, 845 (9th Cir. 2012). Because the ALJ's findings were supported by substantial evidence, this Court may not engage in second-guessing. See Thomas, 278 F.3d at 959.

Accordingly, Plaintiff is not entitled to remand.

**VI. CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[9] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: November 17, 2014

JEAN ROSENBLUTH
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[9] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

15